# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

DAVID HORN,            )
                         )
         Plaintiff,      )
                         )
        v.            )      Case No. 21-cv-02253-JES
                         )
FORD COUNTY SHERRIFF'S OFFICE,   )
                         )
        Defendant.    )

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion for Summary Judgment. Doc. 27 (the "Motion"). Plaintiff filed a Response (Doc. 28), and Defendant filed a Reply. Doc. 29. For the following reasons, the Motion as to Count I is GRANTED and Count II is REMANDED to State court for further proceedings. Thus, the Motion as to Count II is DENIED as moot.

### I.      Background

### A.  Procedural Background

On May 21, 2021, Plaintiff David Horn filed suit against the Ford County Sherriff's Office ("Defendant" or "the Sherriff's Office") in the Circuit Court for the Eleventh Judicial Circuit, Ford County, Illinois. *See* Doc. 1-2 (Complaint) at 1. Mr. Horn alleges that Defendant withheld his medication while he was imprisoned, which caused him to suffer a stroke. He claims that such willful and wanton conduct violated his civil rights, pursuant to 42 U.S.C. § 1983. He also claims that the conduct renders Defendant liable for Intentional Infliction of Emotional Distress ("IIED").[1] On October 13, 2021, Defendant removed the case to federal court. *See* Doc. 1 (Notice of Removal). Defendant answered on October 20, 2021. Doc. 6 (Answer). The Motion followed.

---

[1] Significantly, Plaintiff has only named the Sherriff's Office as a defendant. And, Plaintiff's sole state law claim is for IIED. So, the Court's analysis is confined to the claims before it, which are addressed in this Order and Opinion.

## B. Summary Judgment Briefing

As a preliminary matter, Plaintiff's brief disregards the Local Rules of the Central District of Illinois and well-known standards applied in summary judgment briefing. As the Court has informed parties in previous cases,

> While strict, the requirements imposed on the parties by Rule 56 and Local Rule 7.1(D) are not meant to be punitive. "Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994) .... Because summary judgment is such a drastic remedy, the Court regularly informs the parties when they fail to adhere to these strict requirements, and exercises its discretion to decide whether to apply the rule strictly or to overlook any transgression. *Id*.

*McMahon v. Dunlap Cmty. Unit Sch. Dist. No. 323*, 274 F. Supp. 3d 836, 842–43 (C.D. Ill. 2017); *see also Lugg v. Sutton et al*., JES-18-1412, 2021 WL 3673824, at *2 (C.D. Ill. Aug. 18, 2021).

As relevant to Plaintiff's failures here, Local Rule 7.1(D)(2)(b) provides that a response to a summary judgment motion must state, in separate subsections: undisputed material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional material facts. With regard to the undisputed material facts section, the plaintiff is instructed to "[l]ist **by number** each fact from Section B of the motion for summary judgment which is conceded to be undisputed and material." CDIL-LR (D)(2)(b)(1) (emphasis added). Local Rule 7.1(D)(2)(b)(6) cautions, "[a] failure to respond to any numbered fact will be deemed an admission of the fact." *Id*. Likewise, Fed. R. Civ. P. 56(e)(2) provides that when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, inter alia, "consider the fact undisputed for the purposes of the motion."

Here, Plaintiff's Response to Defendant's Motion for Summary Judgment failed to address any of Defendant's statements of material fact, by number, noting whether such facts were

undisputed or disputed and material or immaterial. Instead, Plaintiff skirted the rule and "incorporated by reference the Statement of Facts contained within Defendant's instant Motion," and, in narrative format, added "additional facts, including disputed facts." Doc. 28 at 2.

The court has fully considered Defendant's concern regarding Plaintiff's failure to abide by the Local Rules in drafting the facts section. *See* Doc. 29 at 1-6. Notably, Defendant suggests that the "Court would be within its authority to simply strike Plaintiff's 'Statement of Facts.'" *Id.* at 2. This would be too extreme a remedy. Even though Plaintiff failed to adhere to the Local Rules, Plaintiff at least cites to the transcript of Mr. Horn's deposition to support his narrative of facts. *See* Doc. 28 at 2-4; *cf. Sanders v. Moss, JEH-16-1366*, 2023 WL 2164520, at \*2 (C.D. Ill. Jan. 24, 2023). Furthermore, Defendant devotes a significant amount of briefing to distinguishing what it believes are the additional and disputed facts discussed by Plaintiff. *See* Doc. 29 at 3-5. Although Defendant was under no impetus to prepare such briefing, it nonetheless alleviates at least some prejudice that Defendant may otherwise suffer. However, to the extent it appears that Defendant could not properly respond to Plaintiff's additional or disputed facts due to Plaintiff's failure to comply with the Local Rules, the Court shall deem Defendant's statement of fact to be admitted. *See Poole v. United States GAO*, 1 Fed. Appx. 508, 510 (7th Cir. 2001); *Bordelon v. Chicago Sch. Reform Bd. of Trs*., 233 F.3d 524, 527 (7th Cir. 2000)).

Moreover, *Latko v. Cox*, No. 20-2634, 2021 WL 5234863 (7th Cir. Nov. 10, 2021), provides guidance as to the effect of a plaintiff's failure to comply with Local Rule 7.1(D) on a court's ability to consider the record outside the parties' briefings. The court stated, *id*. at \*2:

> As a threshold matter, we note that Latko failed to submit a compliant statement of undisputed material facts. *See* C.D. Ill. R. 7.1(D)(1)(b). Rather than strike his filing, the district court, in its discretion, consulted "other materials in the record.[sic]" FED. R. CIV. P. 56(c)(3), namely the transcript of Latko's deposition, which Cox had submitted. *See Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). Neither the district judge nor this court must comb the record

in search of factual disputes, but we are "free to consider" the evidence placed in the summary-judgment record. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 285 (7th Cir. 2015). In this case we find it prudent to consider the same evidence that the district judge relied upon to fill in the gaps in the parties' submissions. *See Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 710 (7th Cir. 2021).

So, too, does the Court here exercise its discretion in reviewing the transcript of Mr. Horn's deposition and other materials, as the Court "is confident in its ability to understand which material facts are actually in dispute, as supported by the record." *White v. Felchner*, SEM-19-3181, 2021 WL 3223067, at *2 (C.D. Ill. July 29, 2021).

### C. Defendant's Statement of Undisputed Material Facts[2]

As indicated above, Plaintiff failed to properly respond to Defendant's statement of undisputed material facts, therefore, unless otherwise noted, the following facts are undisputed. *See* CDIL-LR 7.1(D)(2)(b)(6); Fed. R. Civ. P. 56(e)(2).[3]

*Medication Verification and Administration at the Jail*

During the relevant time, Defendant contracted with a third-party company, Advanced Correctional Healthcare ("ACH"), to provide medical services at the Ford County Jail (the "Jail"). SOF ¶ 3 (citing Doc. 27-6 at 1-3 (Bruens Decl.)).[4] The Jail has a licensed medical physician on call at all times. SOF ¶ 4 (citing Doc. 27-6 at 2). The Sheriff's Office's written policy requires

---

[2] I note that Defendant has, at times, submitted duplicates of its exhibits. For example, Doc. 27-6 at 52-57 and Doc. 27-12 are the same exact document, *i.e.*, Plaintiff's booking information.

[3] Unless otherwise indicated, the Court takes the undisputed facts from Defendant's Motion at Doc. 27, which are cited as SOF ¶ ___. Given the narrative format of Plaintiff's facts section, when a disputed or additional fact is appropriately before the Court, it shall be relegated to a footnote. The Court notes when a fact proffered by Defendant is not supported by the record.

[4] Stacie Bruens serves as a lieutenant in the Sheriff's Office, where she acts as the head administrator for the Jail. Doc. 27-6 at 1. And, the Sheriff's Office is responsible for operating the Jail. SOF ¶ 2 (citing Doc. 27-6 at 1).

officers to follow the instructions of ACH medical personnel regarding inmate medical issues. SOF ¶ 5 (citing Doc. 27-6 at 2; (Doc. 27-6 at 4-50 (the "Policy")).

The Policy provides officers with guidance on how to properly order, dispense, administer, and record medication, and, the Policy requires that officers be trained on these procedures by the responsible physician (or the physician's designee). SOF ¶ 6 (citing Doc. 27-6 at 2, 41-43). Per the Policy, an officer cannot administer an inmate's medication unless the officer receives prior approval from ACH's physician. SOF ¶¶ 7-9 (citing Doc. 27-6 at 2-3, 41-43). And, the physician's instructions for administering an inmate's medicine are to be catalogued in a Medication Administration Record and followed accordingly. *Id.* Significantly, the Policy provides that an officer is not to administer medication if there is an error in the Medication Administration Record or if the officer has any other question. Doc. 27-6 at 42. Instead, the officer is directed to contact ACH. *Id.*

### *Mr. Horn's Medical History[5]*

Mr. Horn had at least one stroke in March of 2020 and was also diagnosed as being diabetic. SOF ¶ 10 (citing Doc. 27-1 (Horn Depo.) at 9, 10, 12.). As a result, he was prescribed: "Aspirin," for stroke prevention; "Lyrica," to treat seizures; 'Glimepiride," to treat Type II diabetes; and

---

[5] The Defendant, not Plaintiff, proffered Mr. Horn's medical records. Neither party petitioned the Court to seal Mr. Horn's medical records. But, under the circumstances, the Court believes sealing is appropriate as to certain medical records, not integral to the resolution of the Motion. *See Chapman v. Raemisch*, LA-05-1254, 2009 WL 425813, at *7 (E.D. Wis. Feb. 20, 2009) (sealing medical records that are not "so relevant to plaintiff's claim that they have been cited or quoted by the parties or the court in other documents.").

To the extent the MVR and MAR are relevant to the outcome of the case, they are excerpted into the facts section. Otherwise, the issue of causation relies so heavily on the expert reports and testimony, so those filings shall not be subject to sealing.

The parties are free to raise an objection to the Court's *sua sponte* decision to seal certain records.

"Atorvastatin," to treat high cholesterol. SOF ¶ 11 (citations omitted).[6] Mr. Horn did not miss a

dosage of his medication prior to his arrest on July 2, 2020. SOF ¶ 11 (citing Doc. 27-1 at 20).

### Mr. Horn's Arrest and Booking[7]

At 11 pm on July 2, 2020, Mr. Horn was arrested and taken to the Jail, pursuant to an arrest

warrant. SOF ¶¶ 1, 13 (citing Doc. 27-6 at 1; Doc. 27-1 at 16; Doc. 27-11 (the warrant)). Mr.

Horn's medications were also transported to the Jail. SOF ¶ 14 (citing Doc. 27-1 at 15, 16).

Mr. Horn was booked into the Jail during a process that lasted about one hour, from 11:30

pm on July 2, 2020, until 12:41 am on July 3, 2020. SOF ¶ 15 (citing Doc. 27-7 at 2); *see also*

Doc. 27-12. During the process, Mr. Horn indicated to the booking officer that he required an

aspirin before bed and his other medicines before breakfast. SOF ¶ 16 (citing Doc. 27-1 at 17).

At 11:45pm, Officer Timothy Woodmansee completed Mr. Horn's Medication

Verification Record ("MVR"). SOF ¶ 16 (citing Doc. 27-7 at 1-3 (Woodmansee Decl.)). The MVR

is contained in the record as follows, Doc. 27-7 at 4 (blank space intentionally omitted:



Medication Verification Form

---

[6] Lyrica is also referred to in the record as pregabalin. Defendant does not offer a citation for the assertion that Lyrica is used by Mr. Horn to treat his seizures. However, Plaintiff does not dispute this statement of fact.

[7] Any reference to the exact time that a particular event occurred is only an approximation.

6

After finishing the MVR, Officer Woodmansee called Dr. Lochard, the Jail's on-call physician, who approved all of Mr. Horn's medications and then gave Officer Woodmansee a schedule for administering the medications. SOF ¶¶ 17-19 (citing Doc. 27-7 at 2, 4).[8] By the time Dr. Lochard instructed Officer Woodmansee as to Mr. Horn's medication schedule, it was the early morning of July 3, 2020. SOF ¶ 20 (citing Doc. 27-7 at 2).

Dr. Lochard indicated to Officer Woodmansee that Mr. Horn should take his Lyrica before bed, and that Mr. Horn's other medications could be administered in the morning. SOF ¶ 21 (citing Doc. 27-7 at 2).[9] Officer Woodmansee then documented Dr. Lochard's instructions in Mr. Horn's Medication Administration Record ("MAR"). SOF ¶ 22 (citing Doc. 27-7 at 2). The MAR is proffered into the record as follows, Doc. 27-7 at 5 (blank space and allergy information intentionally omitted):



---

[8] Dr. Lochard's full name and credentials do not appear in the record.

[9] Defendant devotes a significant amount of briefing to inform the Court that Officer Woodmansee mistakenly filled out the MAR, as he supposedly misunderstood Dr. Lochard's instructions that Mr. Horn's medications were to be given on the morning of July 3, 2020, rather than the morning of July 4, 2020. *See* SOF ¶¶ 23-25 (citations omitted). As noted *infra*, in discussion, this characterization of the facts is not persuasive, and is also undermined by the record.

After Mr. Horn was fully booked into the Jail, sometime between 11:20 pm on July 2, 2020, and 12:40 am on July 3, 2020, the booking officer gave Mr. Horn one of his Lyrica pills. SOF ¶ 26 (citing Doc. 27-1 at 17, 37).[10] Mr. Horn did not communicate with any other officer after being placed in his cell and prior to falling asleep. SOF ¶ 27 (citing Doc. 27-1 at 19).

***Mr. Horn's Stroke on July 3, 2020***

After Mr. Horn woke up July 3, 2020, he told officers throughout the day that he was concerned about not receiving his medications. SOF ¶ 28 (citing Doc. 27-1 at 19-20). The officers uniformly responded by telling Mr. Horn that they would investigate the status of his medications, but the officers never followed up with Mr. Horn. SOF ¶ 29 (citing Doc. 27-1 at 19, 21). And, Mr. Horn's wife called the Jail several times to express apprehension that Mr. Horn was not receiving his medications. SOF ¶ 30 (citing Doc. 27-1 at 23).[11]

On the evening of July 3, 2020, Mr. Horn's physical condition quickly deteriorated. SOF ¶ 31 (citing Doc. 27-1 at 21). Mr. Horn then fell over on his bed and shortly after, a guard shook him awake. SOF ¶ 32 (citing Doc. 27-1 at 22).[12] Mr. Horn was not given his medication until he was being placed on the stretcher. Doc. 27-1 at 23. At that point, a guard arrived at Mr. Horn's cell to administer his medications. SOF ¶ 34 (citing Doc. 27-1 at 24). Mr. Horn was then rushed away from the Jail, by ambulance, to a hospital. SOF ¶ 35 (citing Doc. 27-1 at 22-23). It was then

---

[10] Plaintiff asserts that, during this time, the booking officer indicated that Mr. Horn would not receive any medication while in the Jail, aside from the Lyrica. Doc. 28 at 3 (citing Doc. 27-1 at 17). As discussed, *infra*, the record does not support Plaintiff's statement.

[11] Plaintiff points to Mr. Horn's testimony that officers at the Jail ordered his wife to stop contacting them, and also threatened to file harassment charges against her if she did not stop calling. Doc. 28 at 3 (citing Doc. 27-1 at 22-24). Defendant suggests the Court should not consider this fact as it is immaterial and only supported by inadmissible hearsay. Doc. 29 at 2-3.

[12] It is unclear as to how the guard discovered that Mr. Horn's needed medical care. SOF ¶ 33 (citing Doc. 27 at 22).

determined that on July 3, 2020[13], Mr. Horn suffered a stroke while imprisoned in the Jail. SOF ¶ 36 (citations omitted).[14]

## II.   Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Id.* at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations, or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183(7th Cir. 1993). [15]

---

[13] Both in the Complaint (Doc. 1-2 at 3) and in the Response (Doc. 28 at 3), Plaintiff incorrectly states that he suffered a stroke in the Jail on July 2, 2020.

[14] Defendant also provides, in its statement of undisputed material facts, a description of expert testimony regarding medical causation. *See* SOF ¶¶ 37-38. These facts are detailed, *infra*, in the discussion section.

[15] Plaintiff appears to suggest that the Court should be wary of the self-serving nature of the sworn statements provided by Defendant in support of its Motion. Doc. 28 at 5. The Court recognizes that "self-serving statements in affidavits without factual support in the record carry no weight." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted). But, the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial." Accordingly, only to the extent that Defendant's affidavits, in whole or in part, meet the necessary requirements, shall the Court consider the affidavits in resolving the Motion. *See Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004). Furthermore, Plaintiff's argument belies the fact that he largely relies on his own deposition testimony in support of his Response. *See* Doc. 28.

The non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256-57 (1986) (quotation and citation omitted)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

### III.    Discussion

### A.  Violation of 42 U.S.C. § 1983 (Count I)

Plaintiff alleges that the Defendant is liable under § 1983 for violating Mr. Horn's civil rights by displaying deliberate indifference to his serious medical needs. Doc. 1-2 at 3.

Notably, the Sheriff's Office "is not a legal entity separable from the county government which it serves and is therefore" considered a municipality for the purpose of ascertaining potential liability under § 1983. *Whiting v. Marathon County Sheriff's Dept.*, 382 F.3d 700, 704 (7th Cir. 2004) (citation omitted); *see, e.g.*, *Vasquez v. Will County Sheriff's Office*, MFM-18-3137, 2019 WL 4189477 (N.D. Ill. Sept. 4, 2019); *Wuerffel v. Cook County Sheriff's Office*, CPK-14-3990, 2016 WL 1660497 (N.D. Ill Apr. 27, 2016); *Newell v. Kankakee County Sheriff's Department*, 968 F. Supp. 2d 973 (C.D. Ill. 2013). And, a § 1983 claim may only be lodged against a municipality pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). Thus, Plaintiff's § 1983 action is analyzed under the framework set forth in *Monell*.

"To begin, a § 1983 plaintiff must always show that he was deprived of a federal right." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation and quotation

omitted). Furthermore, "[m]unicipalities do not face *respondeat superior* liability under section 1983 for the misdeeds of employees or other agents. Only actions of the entity will suffice." *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). So, "[t]he central question is always whether an official policy, however expressed ... caused the constitutional deprivation." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). Accordingly, the Plaintiff must satisfy "three requirements to establish [his] *Monell* claim—policy or custom, municipal fault, and 'moving force' causation." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022).

Defendant argues that the case should be dismissed as Plaintiff cannot show a constitutional injury. Doc. 27 at 10-11. And, Defendant asserts that even if Plaintiff was subject to a constitutional deprivation, Plaintiff cannot connect Woodmansee's conduct to an official custom or policy of the Sheriff's Office (*id.* at 11-13), nor can Plaintiff show causation between Woodmansee's actions or omissions and Plaintiff's injury. *Id.* at 13-14. In response, Plaintiff argues that he has adequately pled deliberate indifference by Defendant as to his medical care. Doc. 28 at 4. Plaintiff also avers that he is entitled to further discovery to uncover additional evidence of an institutional policy or custom, and that a determination as to the issue of causation is premature. *Id.* at 5.

Because Plaintiff is a pretrial detainee (Doc. 27-6 at 1; Doc. 27-7 at 1), his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Detainees are entitled to adequate medical care. *Id.* at 353-54. To establish a Fourteenth Amendment violation, a detainee must show: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir.

11

2022) (citation and internal quotation marks omitted). In determining whether a challenged action is reasonable, the court must consider the "totality of facts and circumstances," *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020).

As to the first element, it is abundantly clear from the record that Plaintiff had a serious and objective need for his medication, as his medication was, *inter alia*, prescribed to treat his diabetes and prevent stroke. Doc. 27 at 4. Plaintiff's satisfaction of the remaining three elements, however, is more opaque. And, prior to analyzing these elements, it is important to distinguish the actors and the conduct in question.

In particular, the Motion focuses on Officer Woodmansee's apparent blunder in filling out the MAR. *See* Doc. 27. It is true that nothing in the record can be fairly construed to find that Officer Woodmansee acted intentionally and maliciously in completing the MAR. Rather, Officer Woodmansee's mistake appears to derive from some level of negligence or even gross negligence. If this were the only complained-of incident, it would not appear that the error would rise to the level of a constitutional injury. *See Miranda*, 900 F.3d at 353-54. But, the thrust of Mr. Horn's alleged injury is not isolated to Officer Woodmansee's faulty completion of the MAR. Rather, relevant actions and omissions also occurred on July 3, 2020, from the time Mr. Horn woke up until his stroke which occurred that evening. During this time, Mr. Horn, as well as his wife, repeatedly informed the Jail officers throughout the day that Plaintiff required medication. Yet, the record does not indicate whether any officers followed up on Plaintiff's requests. As to Officer Woodmansee, the record is not clear as to whether he was even working at this time.

I pause to note that, non-medical personnel, like the officers here, are generally justified in relying on the instructions of medical professionals. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005); *see, e.g., Tyner v. Nowakowski*, JRB-19-1502, 2021 WL 4318085, at *4 (N.D. Ill. Sept.

23, 2021) ("As Plaintiff himself alleges, [the defendant] was aware of Plaintiff's condition, aware he had medication on order, and aware that he was receiving care from medical staff. [The defendant] thus was justified in his reliance on the medical expertise of those tasked with Plaintiff's care."); *Daniels v. Janca*, GF-17-906, 2019 WL 2772525, at *5 (N.D. Ill July 2, 2019) ("[I]t was not unreasonable for [the defendant] to decline [plaintiff's] request for his medication instead of "second-guess[ing]" the pill line report and [plaintiff's] medical records."). Indeed, it is the rare case where "it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment." *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) (internal quotation omitted).

Notwithstanding the above, non-medical professionals cannot "simply ignore an inmate's plight," and a plaintiff must show that his "communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." A*rnett v. Webster*, 658 F.3d 742, 755-56 (7th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Once an official knows of such a risk, "the refusal or declination to exercise the authority of his or her office may reflect" the requisite disregard. *Arnett*, 658 F.3d at 756 (internal quotation omitted); *see also Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("[A] guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment is likewise exhibiting deliberate indifference.").

Mr. Horn and his wife pleaded with several officers to administer Plaintiff's medication. Doc 27 at 7; Doc. 27-1 at 22. But the officers refused the request, despite Mr. Horn's warning that he would be at risk of death or stroke if he did not take his medication. Doc. 27-1 at 17, 18.

Nevertheless, Defendant suggests that an officer would be trained to review the MAR as not requiring the dispensation of Plaintiff's medication until 11 pm on July 3, 2020. *See* Doc. 27-

1 at 3. However, it is indisputable that the MAR stated that three of Mr. Horn's medications should be given at 6:30 am on a daily basis. *See* Doc. 27-7 at 5. And, the MVR was consistent, indicating that Mr. Horn's medications should be administered in the morning on a daily basis. *See* Doc. 27-7 at 4. Furthermore, the record clearly shows that Mr. Horn was booked into the Jail on July 2, 2020, *i.e.*, well before 6:30 am on July 3, 2020. *See* Doc. 27-6 at 1; Doc. 27-7 at 1. And, it would be reasonable to expect, in the event of a shift change or some other occurrence, that any given officer would have the ability to readily determine whether Mr. Horn had been given any medication on the morning of July 3, 2020. In light of the above, it would be unreasonable for an officer to ignore Mr. Horn's continued requests for his medication.

That is not to suggest, however, that an officer should have actually given Mr. Horn any medications. The Defendant admits that the Jail utilizes a licensed medical physician who is available and on-call 24-hours a day and seven days a week. *See* Doc. 27-6 at 2. So, at the very least, the physician should have been contacted, as is required by the Policy. *Id.* at 43 Nothing in the record suggests that an officer actually contacted the physician, or for that matter, did anything to respond to Mr. Horn's complaints, outside of stating that the issue would be investigated. Doc. 27 at 7. Moreover, the act of calling an ambulance to take Mr. Horn to the hospital for treatment after he began to experience severe medical symptoms does not serve to remedy what seems to be an appropriately characterized willful ignorance in the face of Mr. Horn's repeated requests for medication. *See Lewis v. McLean*, 864 F.3d 556, 565 (7th Cir. 2017) (condemning prison personnel for doing "literally, nothing" despite having notice of prisoner's medical complaints and issues).

Viewing the inferences in favor of Plaintiff as the non-movant, there is, at a minimum, a question of material fact as to whether the officers' conduct in ignoring Mr. Horn's continued requests for needed medical care was objectively unreasonable and in reckless disregard of risk to

14

Mr. Horn's health. Accordingly, Plaintiff has met the threshold inquiry of showing an infringement of his constitutional rights.

Nevertheless, Plaintiff's "claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort [] without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (citing *Wilson v. Garcia*, 471 U.S. 261, 278 (1985)). Indeed, "to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

Defendant argues that Plaintiff cannot show that he suffered injury due to the alleged constitutional deprivation, *i.e.*, Plaintiff's stroke, was caused by a delay in receiving his medication. Doc. 27 at 13-14. Defendant has retained two medical experts who have provided reports and testimony as to the issue of causation, and which Defendant cites in support of its Motion. *Id.* The first expert, Dr. Abraham Kocheril, the Director of Cardiac Electrophysiology at OSF HealthCare Cardiovascular Institute Urbana, reports that Mr. Horn's neurological episode on July 3, 2020, is characterized as a lacunar stroke. *See* Doc 27-2 at 1-3 (Dr. Kocheril's Report); *id.* at 4-53 (Dr. Kocheril's Curriculum Vitae); Doc. 27-4 (Dr. Kocheril Depo.)[16]  The second expert, Dr. Paul Later, the Neurology Medical Director at North Region Northwestern Medicine, is in agreement as to the type of stroke suffered by Mr. Horn. *See* Doc. 27-3 at 1-4 (Dr. Later's Report);

---

[16] The Court notes that the digital pagination of Dr. Kocheril's deposition testimony is inconspicuously omitted.

*id.* at 5-9 (Dr. Later's curriculum vitae); *id.* at 10 (Dr. Later's Fee Schedule); Doc. 27-5 (Dr. Later Depo.).

After an extensive review of Mr. Horn's medical history, Dr. Kocheril determined, to a reasonable degree of medical certainty (Doc. 27-2 at 3), that "[i]t is not reasonable to say that lack of access to the medications he was taking, over a 24 hour period, led to his stroke." *Id.* at 2. In particular, Dr. Kocheril reported that "[m]issing a day or two of aspirin or atorvastatin would not have caused [the] kind of clot" suffered by Mr. Horn. *Id.* And, "Pregabalin would not have had any bearing on causation of stroke." Furthermore, "[a]fter review of the medical records from OSF and Riverside," *i.e.*, where Mr. Horn received medical treatment on July 3 and July 5, 2020, Dr. Kocheril "f[ou]nd no evidence of any physicians' opinion that the patient missing medications caused the stroke of July 2020." *Id.*

Consistent with Dr. Kocheril's report, Dr. Later made the following finding (Doc. 27-3 at 3) (emphasis added):

> In summary, it is unfortunate that Mr. Horn suffered a stroke recurrence on 7/3/2020 but his not receiving aspirin, atorvastatin and gliperimide for 1 or even 2 days while in the Ford County Jail was not to blame for his 7/3/2020 stroke. Rather, the risk factors above overwhelmingly are responsible for causing the 7/3/2020 stroke. ***Tobacco abuse, diabetes, hypertension, hyperlipidemia, sedentary lifestyle (family history of stroke plays some role) are the risk factors that put him at risk for this stroke 7/3/20 as well as the previous 2 strokes identified on his MRI scans***. A lack of long term control of these risk factors predisposed him to all of his 3 strokes including the stroke on 7/3/2020. ***The stroke he suffered 7/3/20 was no more the fault of the Ford County Jail than his 2 prior strokes had been***.

Plaintiff has failed to provide any evidence that refutes these reports. Indeed, Plaintiff has failed to cite to the deposition testimony of either medical expert as somehow contradicting or undermining the information contained within the reports. Instead, Plaintiff only addresses these reports by arguing that "the testimony of Plaintiff's treating physicians in the case at bar regarding causation, specifically that Defendant's failure to administer medication to Plaintiff and his strokes

were likely coincidental, is more in the nature of an estimation and not based on definite physiological evidence, as the question of whether Defendant's failure (or refusal) to provide Plaintiff with his medication led to his suffering strokes would better be decided at trial." Doc. 28 at 5.

The Court notes that Plaintiff mistakenly states that the expert witnesses were Plaintiff's treating physicians. Doc. 28 at 5: *see* Doc. 27-4 at 3; Doc. 27-5 at 4. And, it appears, contrary to Plaintiff's assertion, that the expert reports are based on definite physiological evidence. Dr. Kocheril and Dr. Later both reviewed an extensive array of Mr. Horn's medical records, including radiologic images taken during Mr. Horn's treatment of his stroke in July 2020. *See* Doc. 27-2 at 1; Doc. 27-3 at 3-4. The Court is not persuaded by Plaintiff's position, as Plaintiff's argument is "underdeveloped, conclusory, [and] unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

In light of the evidence proffered by Defendant, and the complete dearth of evidence provided or even alluded to by Plaintiff, the Court concludes that no reasonable jury would find that Mr. Horn's delay in access to his medication, *i.e.*, his constitutional injury, caused his stroke. *See Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 680 (7th Cir. 2023) (finding that plaintiff failed to support that "the ten-day gap in medical care caused him some harm.") (citing *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007)).

Furthermore, assuming arguendo that the constitutional injury resulted in a stroke, that would not be enough to establish a § 1983 claim, as filed by the Plaintiff. As previously noted, the Plaintiff did not bring action against ***any*** individual defendants but chose instead to bring the action against the Sheriff's Office. The Sheriff's Office is not liable under § 1983 for the actions or

omissions of its employees under a theory of *respondeat superior.* Instead, Plaintiff must connect his constitutional injury to a policy or custom of the Sheriff's Office.

In the Complaint, Plaintiff does not allege a constitutionally violative policy or custom. But, even if Plaintiff had made such a claim, it would not pass muster. Under *Monell* there are "three bases for municipal liability: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Additionally, a "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)).

Defendant argues that it has proffered evidence showing the existence of a constitutionally compliant policy concerning medication administration. Doc. 27 at 11-12. Defendant avers that it trains its employees on how to administer medication, and that its policies provide for the timely, not untimely, administration. *Id.* at 12-13. Defendant's undisputed statement of fact supports its assertion. *See* SOF ¶¶ 3-9. Plaintiff does not controvert any of Defendant's arguments concerning the policy or identify facts to the contrary. *See* Doc. 28. Rather, Plaintiff seems to suggest that it is not required to demonstrate at the Motion for Summary Judgment phase "that Defendant's misconduct and/or ineptitude was part of a custom, policy and/or practice in its treatment of Plaintiff…" *Id.* at 5 (citing *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016)).

Plaintiff misstates the holding, standard, and facts set forth in *Daniel*, 833 F.3d 728. For one, the Seventh Circuit clearly stated that a plaintiff "must show more than the deficiencies specific to his own experience, of course." *Id.* at 734 (citation omitted). And, the plaintiff "must come forward with evidence that could allow a reasonable trier of fact to find… systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Id.* at 735 (citing *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)). But, a plaintiff "need not present evidence that these systemic failings affected other specific inmates." *Daniel*, 833 F.3d at 735 (citing *Davis v. Carter*, 452 F.3d 686, 695 (7th Cir. 2006)).

Plaintiff has proffered a pittance of evidence. Nothing in the record, or even posited by Plaintiff, could lead a reasonable jury to conclude that Defendant's failure to provide Mr. Horn's medication was more than a single, isolated incident. In contrast, the plaintiff in *Daniel* "provided substantial evidence of systemic deficiencies in the Jail's medical care, including extensive testimony from Jail medical staff." *Daniel*, 833 F.3d at 735.

To further buttress his argument as to the required evidentiary burden under *Monell* at summary judgment, Plaintiff makes the rather bizarre assertion that further "discovery in the instant case should enable Plaintiff to uncover additional evidence of lapses by Defendant in administering medication to other prisoners at the Ford County Jail…" Doc. 28 at 5. The deadline for discovery has long since passed. *See* Text Order Dated July 18, 2022. And, "[t]he flow of cases through a busy district court is aided, not hindered, by adherence to deadlines." *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996). Indeed, judges routinely admonish counsel for failing to abide by the terms of a discovery deadline. *See Alight Solutions v. Thomson*, JC-20-3043, 2021 WL 5119111, at *2 (N.D. Ill. Nov. 3, 2021) ("In the end, a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.")

(citation and quotation marks omitted). Plaintiff has not identified an entitlement to additional discovery or even asked for it.   This is not the time for conjecture as to what additional discovery might have revealed. *See Waldridge*, 24 F.3d at 920 (7th Cir. 1994) (emphasis in original) ("[I]f the non-movant [in a summary judgment proceeding] does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986)). Summary judgment is the stage where a plaintiff "'must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)).

While it is not clear, Plaintiff appears to suggest that Defendant is liable under a failure-to-train theory. Plaintiff suggests that Defendant is liable under *Monell* for deliberately refusing "to accurately follow and competently adhere to the regimen established by the consulting physician on call for Defendant, for administering Plaintiff's medication." Doc. 28 at 4. This argument fails, however, as liability for the failure to train carries "a stringent standard of fault" that requires a "pattern of similar constitutional violations," except for a "narrow range of circumstances" in which "a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 62-94 (citation omitted). In such cases, the "risk of constitutional violations [is] so high and the need for training so obvious that the municipality's failure to act can reflect deliberate indifference and allow an inference of institutional culpability, even in the absence of a similar prior constitutional violation." *J.K.J. v. Polk County*, 960 F.3d 367, 380 (7th Cir. 2020). "Qualifying circumstances under this doctrine are rare; [a] constitutional violation must be a

blatantly obvious consequence of inaction for single-incident liability to apply." *Giese v. City of Kankakee*, 71 F.4th 582, 590 (7th Cir. 2023) (quotation and citation omitted).

Nothing in the record indicates a pattern of similar constitutional violations. Nor is it blatantly obvious that the Sheriff's Office medication dispensation training program was so deficient that it created a high risk of constitutional injury.[17] No reasonable jury could conclude that Plaintiff has demonstrated the existence of a policy or custom that contributed to the violation of Mr. Horn's constitutional rights.[18]

In light of the foregoing, Defendant's Motion as to Count I of Plaintiff's Complaint is GRANTED.

## B. Intentional Infliction of Emotional Distress (Count II)

Plaintiff also brings a state law claim for IIED. Doc. 1-2 at 4.[19]

---

[17] Similarly, a claim lodged under a failure to supervise theory would fail as well, as such claims "are a 'tenuous' form of *Monell* liability." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (citation omitted).

[18] As Plaintiff has not alleged a constitutionally violative policy or custom, Plaintiff cannot show that the Sheriff's Office "policy or custom demonstrates municipal fault." *First Midwest Bank ex rel. LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021) (internal quotation and citation omitted); *see also Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010) ("To demonstrate that the County is liable for a harmful custom or practice, the plaintiff must show that County policymakers were 'deliberately indifferent as to [the] known or obvious consequences.'") (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). For the same reason, Plaintiff cannot possible connect a custom or policy with his constitutional injury. *See Orozco v. Dart*, 64 f.4th 806, 824 (7th Cir. 2023) "[A] plaintiff seeking to hold a municipality liable must show causation. 'That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'") (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)).

[19] Plaintiff's claim is presumably lodged under a theory that the Defendant is vicariously liable for the conduct of its employees. It is true that "[a]n employer may be vicariously liable for the tort of an employee[, including IIED], if the tort is committed within the scope of the employment." *Bagent v. Blessing Care Corp.*, 224 Ill.2d 154, 308 Ill. Dec. 782, 862 N.E.2d 985, 991 (2007); *see also Richards v. U.S. Steel*, 869 F.3d 557, 565-68 (7th Cir. 2017). And, "[f]or

"[T]he general rule [is] that 'when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.'" *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532 (7th Cir. 2022) (quoting *Lalowski v. City of Des Plaines*, 789 F.3d 784, 794 (7th Cir. 2015)). "But, judicial economy, convenience, fairness and comity may point to federal retention of state-law claims ... when it is absolutely clear how the pendent claims can be decided." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). As a result, the Court will examine the sufficiency of the IIED allegations, as well as the merits of the Motion, to determine whether it should retain or relinquish jurisdiction.

Defendant argues that Plaintiff's IIED claim should be rejected, as Plaintiff cannot establish that Officer Woodmansee's conduct was extreme and outrageous. Doc. 27 at 15-16. And, Defendant asserts that Officer Woodmansee did not intend to cause Plaintiff's injury (*id.* at 14-15), nor did a delay in administering medication to Plaintiff cause an injury. *Id.* at 16. In response, Plaintiff argues that he is not required to show intent, rather, reckless disregard suffices. Doc. 28 at 6. Plaintiff also suggests that Defendant's refusal to act on Mr. Horn's repeated requests for medication, as well as the booking officer's comments regarding Mr. Horn's access to medication, is conduct that satisfies the basis of a claim for IIED. *Id.* at 6-7.

"Illinois sets a 'high bar' for intentional infliction of emotional distress claims." *Trahanas v. Northwestern University*, 64 F.4th 842, 859 (7th Cir. 2023) (internal citation omitted). Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if

---

conduct to be within the scope of employment it must: (1) be of the kind the employee is employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be performed, at least in part, by a purpose to serve the master." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016).

the plaintiff shows "'(1) extreme and outrageous conduct, (2) intent by the defendant to cause or a reckless disregard of the probability of causing emotional distress, (3) severe or extreme emotional distress suffered by the plaintiff, and (4) an actual and proximate causation of emotional distress by the defendant's outrageous conduct.'" *Carter v. Illinois State Police Dep't*, SLD-22-01089, 2023 WL 4747669, at *4 (C.D. Ill. July 25, 2023) (quoting *Hayes v. Illinois Power Co*., 225 Ill.App.3d 819, 826, 167 Ill. Dec. 290, 294 587 N.E.2d 559, 563 (1992)); *see also Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill. Dec. 228, 798 N.E.2d 75, 80 (2003)).

"To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (quoting *Kolegas v. Heftal Broad. Corp*., 154 Ill.2d 1, 21, 180 Ill. Dec. 307, 317, 607 N.E.2d 201, 211 (1992)). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: "(1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp*., 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 127 Ill. Dec. 724, 533 N.E.2d 806, 811 (1998)). The Illinois Supreme Court has explained, "Conduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 161 Ill.2d 374,

23

204 Ill. Dec. 274, 641 N.E.2d 498, 507 (1994) (quoting Restatement (Second) of Torts § 46, cmt. D, at 73 (1965)).[20]

Moreover, "emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id.* at 1030 (quoting *Kleidon v. Rizza Chevrolet, Inc*., 173 Ill.App.3d 116, 122 Ill. Dec. 876, 527 N.E.2d 374, 377 (1988)). "'Severe emotional distress' is distress so severe that no reasonable person could be expected to endure it." *Lifton v. Board of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 281 Ill. Dec. 215, 803 N.E.2d 619, 625 (Ill. App. 1 Dist. 2004)). "[W]hen the distress has manifested itself either through physical symptoms or has necessitated medical treatment, Illinois courts have been more inclined to characterize the emotional distress as severe." *Honaker v. Smith*, 256 F.3d 477, 495 (7th Cir. 2001) (collecting cases). Courts often "merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress." *Bristow v. Drake Street Inc*., 41 F.3d 345 (7th Cir. 1994).

Under the above referenced framework, the Court does not find it abundantly clear whether Mr. Horn's can satisfy the elements necessary to establish his IIED claim. And so, the Court

---

[20] Of relevance here, federal district courts in Illinois routinely conclude that denying a prisoner access to necessary medication may lay the foundation for an IIED claim. *See, e.g., Hardy v. Butler*, GCS-15-437, 2020 WL 888039, at *7 (S.D. Ill. Feb. 24, 2020); *Dorsey v. Obaisi*, ARW-16-7884, 2019 WL 1254896, at *3-4 (N.D. Ill. Mar. 19, 2019); *Hardy v. Illinois Dept. of Corr., Wexford Health Serv. Inc*., MJR-15-437, 2016 WL 7099964, at *5 (S.D. Ill. Dec. 6, 2016); *Awalt v. Marketti*, 74 F. Supp. 3d 909, 941-43 (N.D. Ill. 2014); *Liebich v. Hardy*, RWG-11-5624, 2013 WL 4476132, at *14 (N.D. Ill. Aug. 19, 2013); *cf. Harrison v. Wexford Health Sources Inc.*, JBM-17-1383, 2018 WL 659862, at *8 (C.D. Ill. Feb. 1, 2018) (highlighting that a single instance of conduct including, *inter alia*, withholding medicine, was not sufficiently severe or outrageous).

concludes that remand is appropriate. In particular, the evidentiary record as to Mr. Horn's IIED

claim, especially when contrasted to his § 1983 claim, is presently underdeveloped by both parties.

Furthermore, the Court cannot properly address the IIED claim due to the deficiencies in the

parties' argumentation. *See White Eagle Co-Op Association v. Conner*, 553 F.3d 467, 476 (7th Cir.

2009). Specifically, certain key areas, such as whether the individual officers acted within the

scope of their employment with Defendant and whether Plaintiff suffered severe emotional

distress, are inadequately briefed. Additionally, both parties' briefing appears misguided at

times.[21] As such, because both the record and briefing are insufficient, the Court has not expended

substantial enough resources to warrant keeping the claim in federal court on the basis of furthering

judicial economy.

Although the Court cannot decide whether Plaintiff's IIED claim should ultimately be

heard at trial, it is nevertheless not the type of "'doomed litigation'" that would undoubtedly be

dismissed on remand, and therefore not serve federal-state comity. *Groce v. Eli Lilly & Co*., 193

F.3d 496, 502 (7th Cir. 1999) (quoting *Sullivan v. Conway*, 157 F.3d 1092, 1095 (7th Cir.1998)).

And, the Court's decision to remand the case the state court in which the cause of action was

originally filed certainly seems to convenience the parties. Furthermore, the dismissal of Plaintiff's

federal claim does not have a "preclusive effect" on the supplemental state-law claim, nor are the

---

[21] For example, Defendant seems to conflate the causation aspect of the IIED claim in arguing that the officers' conduct did not cause Mr. Horn's stroke, rather than addressing whether the relevant conduct caused Mr. Horn's emotional distress. *See* Doc. 27; Doc. 29. Similarly, As was the case with Plaintiff's § 1983 claim, Defendant ignores the facts surrounding Mr. Horn's repeated requests for his medication, and almost exclusively briefs the Court on the relevance of Officer Woodmansee's conduct to Plaintiff's IIED claim. *See id.*

As to Plaintiff's briefing on the IIED claim, he cites to the Complaint as evidence of the mental or emotional harm he suffered. Doc. 28 at 4-5. At this stage in the litigation, Plaintiff "can no longer depend on the allegations in [his] complaint." *Blanton v. RoundPoint Mortgage Servicing Corp*., 825 Fed. Appx. 369, 372 n.1 (7th Cir. 2020).

supplemental and federal claims "so entangled" that "the rejection of the latter probably entails rejection of the former." *In re Repository Technologies, Inc*., 601 F.3d 710, 725 (7th Cir. 2010) (citations and internal quotations omitted).

Finally, the Court cannot ignore the undisputed fact that two important events occurred on July 3, 2020, that is, Mr. Horn was denied medication that was prescribed to prevent strokes and that he subsequently suffered a stroke. While the court is unable to address the contours of liability that may or may not attach in state court, Mr. Horn, in the spirit of fairness, deserves to have his claim heard in an appropriate forum. Therefore, judicial economy, convenience, fairness, and comity weigh in favor of remanding the case to State court. *See Taflinger v. U.S. Swimming, Inc*., 435 Fed. Appx. 559, 562 (7th Cir. 2011) (concluding that the district court's failure to consider judicial economy, convenience, fairness, and comity in remanding case to state court constituted an abuse of discretion) (citations omitted).

In light of the foregoing, Count II is REMANDED to State court for further proceedings.[22] Thus, the Motion as to Count II is DENIED as moot. *See Barnett v. Alcoa, Inc*., RLY-06-184, 2007 WL 1183823 (S.D. Ind. Apr. 18, 2007) (denying dispositive motion as moot upon remanding case to state court).

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 27) as to Count I is GRANTED and as to Count II is DENIED as moot.

This cause of action is hereby REMANDED to the Eleventh Judicial Circuit, Ford County,

---

[22] The Court reminds Plaintiff's counsel, Mr. Dunn, of his ethical and moral duty to zealously represent his client. This duty obliges Mr. Dunn to brief reasoned arguments relevant to the posture of the case and to adequately develop the record in support of his client's claims.

Illinois without apportionment of costs or expenses. The District Clerk is to mail a certified copy of this order to the clerk of the State court. The State court may thereafter conduct all further proceedings in this case.

The District Clerk is directed to SEAL the following docket entries: Doc. 27-6 at 53-57; Doc. 27-7 at 4-5; Doc. 27-8; Doc. 27-9; and Doc. 27-12 at 2-6.

The District Clerk is directed to CLOSE the case.


Entered on this 2nd day of October 2023.


/s/ *James E. Shadid*
UNITED STATES DISTRICT JUDGE
